**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**DAVENPORT DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Civil Action No.** **3:11-cv-00041-CRW-TJS** |
| | § § | |
| **HILL COUNTRY FARMS, INC., d/b/a HENRY'S TURKEY SERVICE** | § § § | |
| **Defendant.** | § § | |
| _____ | § | |

**EEOC'S STATEMENT OF**
**UNDISPUTED MATERIAL FACTS IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

1. On February 24, 2009, James Keith Brown, through his sister and legal representative, Sherri Brown, filed a charge with the EEOC's Dallas District Office alleging disability discrimination by Hill Country Farms, Inc., in violation of the Americans with Disabilities Act of 1990.  [EEOC Charge Form of Brown, attached to Certification of Belinda McCallister, EEOC records custodian, App. 84-85].

**Background Facts**

2. In the mid-1960's, Hill Country Farms, a for-profit corporation, with its principle place of business located in Goldthwaite, Texas, began working with disabled men in a variety of agricultural activities. [*Solis v. Hill Country Farms, Inc.*, 808 F.Supp.2d 1105, 1108

1

(S.D. Iowa 2011), *aff'd*, No. 11-3069, 2012 WL 1674176 (8th Cir. 2012)( "*Solis v.*

*HCF*"), App.1-21; <u>DOL Statement of Uncontroverted Material Facts</u> filed in *Solis v.*

*HCF, Dkt. #7* ("DOL SOF"), pg. 1-2, Nos. 1, 7-8, App.56-57; Hill Country Farms, Inc.

<u>Response to Statement of Uncontroverted Material Facts</u>, filed in *Solis v. HCF, Dkt. #8*

("HCF RSOF"), pg. 1,  Admission Nos. 1, 7-8, App. 77; Deposition of Kenneth Henry,

taken by U.S. Department of Labor on 10/12/10, in *Solis v. HCF* ("DOL Henry Dep."),

14:18-15:2, 15:22-16:14, App. 93-95].

3.   Kenneth Henry, the owner of Henry's Turkey Service, Inc., and T.H. Johnson jointly

incorporated as Hill Country Farms, Inc. d/b/a Henry's Turkey Service. Defendant uses

the names "Hill Country Farms" and "Henry's Turkey Service" interchangeably

(hereinafter "HCF/HTS"). [*Solis v. HCF*, at 1108-1109, App.1-21; *Henry v. Iowa Dep't*

*of Workforce Dev.,* No. CV8615, *2 (Dist. Ct. Sept. 9, 2011)(*unpublished*)(*"Henry v.*

*IDWD*"), App. 22-35;  DOL SOF , pg. 1-2, Nos. 2-3, 9, App. 56-57; HCF RSOF,  pg. 1,

Admissions Nos. 2-3, 9, App.77;  DOL Henry Dep. at 13:6-14:12, 133:7-13, App. 92-

154; Deposition of Kenneth Henry, taken by U.S. EEOC on 5/23/12 ("EEOC Henry

Dep.") at pg. 5:1-6, App. 201].

4. By the late 1970's, HCF/HTS began contracting with a turkey processing plant located in

West Liberty, Iowa to provide the disabled men as workers on the plant's turkey

processing line. [*Solis v. HCF*, at 1109, App. 1-21 ; *Henry v. IDWD*, at *3, App. 22-35;

DOL SOF, pg. 3, No. 13, App. 57; HCF RSOF, pg. 1, Admissions No. 13, App. 77; DOL

Henry Dep. at 34:1-21, 37:10-17, App. 102-103].

5.   From at least 2006 until February 7, 2009, the HCF/HTS disabled employees worked on

the processing line, commingled with the plant's non-disabled employees. [*Solis v. HCF*,

at 1110, App. 1-21; DOL SOF , pg. 3, No. 14, App. 58; HCF RSOF, pg. 2, Admissions
No. 14, App. 78; DOL Henry Dep. at 48:1-49:19, App. 109-110; Deposition of Danny
Miles taken by U.S. EEOC on 5/17/12 ("Miles Dep."),  at 49:21-50:3, App. 510-511].

6.   During the entire period they worked at the plant, the HCF/HTS employees were housed
in a converted school house, known as "the Bunkhouse", in Atalissa, Iowa, a few miles
down the road from the plant where they worked in West Liberty, Iowa, until it was
shut down in February of 2009 by the State of Iowa and the men were removed. [*Solis v.
HCF* , at 1109-1110, App. 1-21 ; DOL SOF , pg. 3, Nos. 15-16, App. 58; HCF RSOF, pg.
2, Admission Nos. 15-16, App. 78; *Henry v. IDWD*, at *4, App. 22-35; DOL Henry Dep.
at 8:4-8, 37:23-38:3, App. 91-104; Deposition of Randy Neubauer taken by U.S. EEOC
on 5/15/12 ("RNuebauer Dep."), at 26:11-16, App. 418].

7.   For more than thirty (30) years during which the disabled men were employed in Iowa,
all of them were always paid in the same manner, using the same method of calculation, a
cash payment of $65.00 per month. [*Solis v. HCF* , at  1111, App. 1-21 ; DOL SOF, pg.
12, Nos. 71, 72, 105, App. 73; HCF RSOF, pg. 4, 6, Admission Nos. 71, 72, 105, App.
80-82; *Henry v. IDWD*, at *5, *11, App. 22-35; DOL Henry Dep. at 68:8-10, 143:24-
144:4, 147:6-9, App. 125-163;  Deposition of Jane Ann Johnson, taken by U.S.
Department of Labor on 10/13/10 in *Solis v. HCF* ("DOL Johnson Dep."), at 22:19-22,
App. 343; Deposition of Robert Berry taken by U.S. EEOC on 5/22/12 ("EEOC Berry
Dep.") at 49:2-58:19, App. 257-266].

8.   HCF/HTS alleges that the disabled men were paid enough to constitute a legal minimum
wage when the $65.00 per month was combined with provided "room and board" and "in
kind care," which the Defendant urges should be credited toward the wages. [*Solis v.

*HCF*, at 1111-1112, 1116 App. 1-21; DOL SOF, pg. 11, 19, Nos. 70, 112, App. 58-59;

HCF RSOF, pg. 4, 6, Admission Nos. 70, 112, App. 80-82; DOL Henry Dep. at 137:25-

138:23, App. 155-156;  Declaration of Dep't of Labor Wage and Hour Division

("DOL/WHD") District Director Michael Staebell, dated June 2012, ("EEOC Staebell

Declaration"), App. 522-529; Declaration of Kevin O'Brien, DOL/WHD Investigator,

dated June 2012 ("EEOC O'Brien Declaration"), App. 530-546; EEOC Berry Dep. at

49:2-58:22, App. 257-266].

9.   All of the employees for whom the EEOC is seeking back wages received monthly

deposits of Social Security and/or Supplemental Security Income ("SS and "SSI") into

their individual bank accounts located at Mills County State Bank in Goldthwaite, Texas.

[*Solis v. HCF*, at 1110, App. 1-21; DOL SOF, pg. 14-15, Nos. 85-88 App. 69-70; HCF

RSOF, pg. 5, Admission Nos. 85-88, App. 81;  Final Agency Decision by the State of

Iowa, *In the Matter of Henry and Johnson d/b/a Hill Country Farms and Henry's Turkey

Service v. Iowa Department of Workforce Development, Division of Labor Services*, IWD

No. CP-003-09/DIA No. 09IWD030 (Mar. 8, 2011)(*unpublished*), ("IA-FAD"), at *6,

*15, App. 36-55; DOL Henry Dep. at 139:15-141:2, App. 157-159;  DOL Johnson Dep.

at  15:3-7, 81:2-14, 95:3-10, App. 340-347; Deposition of Jane Ann Johnson-Moreland

taken by EEOC on 5/24/12 ("EEOC Johnson-Moreland Dep."), at 17:1-18:3, 36:16-

37:11, App. 363-383; EEOC Berry Dep. at 35:5-25, 39:24-40:17, App. 247-249].

10.  The defendant corporation, through its officer Jane Ann Johnson, was listed as the

Designated Representative Payee on these accounts, with total control over the money in

the accounts.  [*Solis v. HCF*, at 1110, App. 1-21; DOL SOF, pg. 15-16, Nos. 87, 94 App.

70-71; HCF RSOF, pg. 5, Admission Nos. 87, 94, App. 81;  IA-FAD,  at *6, *15, App.

36-55; DOL Johnson Dep. at 81:2-14, 98:4-23, App. 344-348; EEOC Johnson-Moreland Dep., at 17:1-19:14, 27:15-28:6, 33:3-35:23, App. 363-381; DOL Henry Dep. at 140:19-141:2, App. 158-159; EEOC Berry Dep. at 39:24-40:17, App.248-249].

11. According to HCF/HTS, these Social Security funds were represented by HCF/HTS to have been used to "reimburse" the company for expenses the Defendant claims to have incurred by providing "board, lodging and other facilities" to the disabled employees. [*Solis v. HCF*, at 1110, 1118, App. 1-21; DOL SOF , pg. 15-16, Nos. 89-96, App. 70-71; HCF RSOF, pg. 5, Admission Nos. 89-96, App. 81; IA-FAD, at *15, App. 36-55; DOL Johnson Dep. at 18:8-18, 91:11-92:9, 99:14-101:23, 104:11-19, 112:12-114:18, App. 341-355; EEOC Johnson-Moreland Dep., at 17:1-37:8, App. 363-383; Deposition of Robert Berry, taken by U.S. Department of Labor on 10/14/10 in *Solis v. HCF* ("DOL Berry Dep."), at 23:22-24:21, App. 236-237; EEOC Berry Dep. at 41:10-43:11, 81:18-94:3, App. 250-294; DOL Henry Dep. at 140:19-141:2, App. 158-159].

12. HCF/HTS's business activities in Iowa had been investigated previously by the United States Department of Labor's Wage and Hour Division ("DOL/WHD"), including an investigation which concluded in 2003. [*Solis v. HCF*, at 1111-1112, App. 1-21 ; DOL SOF , pg. 18-19, Nos. 106-109, App. 73-74; HCF RSOF, pg. 6, Admission Nos. 106-109, App. 82; IA-FAD, at *5, App. 36-55; EEOC Staebell Declaration, App. 522-529].

13. The DOL/WHD determined that HCF/HTS had violated the FLSA and instructed HCF/HTS regarding minimum wages, overtime, Section 3(m) credits and record keeping; however, despite the knowledge of these violations, and an agreement to comply with the wage laws, HCF/HTS never changed its pay practices. [*Solis v. HCF*, at 1112, 1116, App. 1-21; DOL SOF, pg. 19, Nos. 110-112, App. 74; HCF RSOF, pg. 6, Admission Nos. 110-

112, App. 82;  IA-FAD,  at *5, App. 36-55; EEOC Staebell Declaration, App. 522-529;

DOL Berry Dep. at 42:15-43:9, App. 239-240].

14. At all times relevant hereto, HCF has been an enterprise engaged in commerce.

[*Solis v. HCF* , at 1108, App. 1-21; DOL SOF , pg. 2, No. 4, App. 57; HCF

RSOF, pg. 1, Admission Nos. 4, App. 77].

15. HCF/HTS is a for-profit corporation with its principal place of business located in

Goldthwaite, Texas, and conducted business within the State of Iowa. [*Solis v.

HCF* , at 1108, App. 1-21; DOL SOF, pg. 1-2, Nos. 1-6, App. 56-57; HCF RSOF,

pg. 1, Admission Nos.1-6, App. 77].

16. Beginning in the late 1970's, Henry and T.H. Johnson negotiated with Louis Rich Foods

to supply workers to work at the Louis Rich turkey processing plant in West Liberty,

Iowa.   [*Solis v. HCF*, at 1109, App.1-21; DOL SOF , pg. 3-4, Nos. 13, 18, App. 58-59;

HCF RSOF, pg. 1-2, Admission Nos. 13, 18, App. 77-78; *Henry v. IDWD,* at *2-3, App.

22-35; DOL Henry Dep. at 34:1-21, 37:10-17, 40:22-41:9, App. 102-106].

17. Over the years, the plant changed ownership several times, but HCF/HTS continued to

provide workers throughout each change of ownership.  [*Solis v. HCF*, at 1109, App. 1-

21; DOL SOF, pg. 4, No. 19, App. 59; HCF RSOF, pg. 2, Admission No. 19, App. 78;

DOL Henry Dep. at 45:3-22, App. 107].

18. In 1996, HCF/HTS entered into a Contract with WLF, and per the Contract, HCF/HTS

provided an adequate number of "Contractor's employees" to perform services. [*Solis v.

HCF*, at 1109, App. 1-21; DOL SOF, pg. 4-5, Nos. 22-23, App. 59; HCF RSOF, pg. 2,

Admission Nos. 22-23, App. 78*;  Henry v. IDWD* at *3, *10, App. 22-35; Declaration of

Dan Waters, General Counsel/Vice President for West Liberty Foods, dated June 2012,

("EEOC Waters Declaration"), App. 547-558; DOL Henry Dep. at 113:22-115:25, App. 145-147].

19. As part of their day-to-day operations, HCF/HTS determined which of the workers would be assigned to the facility for work. [*Solis v. HCF*, at 1109, App. 1-21; DOL SOF, pg. 4, Nos. 20-21, App. 59; HCF RSOF, pg. 2, Admission Nos. 20-21, App. 78; *Henry v. IDWD* at *3, *10, App. 22-35; EEOC Waters Declaration, App. 547-558; DOL Henry Dep. at 51:18-52:17, App. 111-112; EEOC Henry Dep. at pg. 37:18-39:24, App. 202-204; RNeubauer Dep. at 23:10-26:5, 121:20-124:22, App. 415-453].

20. HCF/HTS supervisory crew chiefs, not West Liberty Foods employees, directly supervised the HCF/HTS workers on the processing line. [*Solis v. HCF*, at 1109, App. 1-21; DOL SOF, pg. 4, No. 24, App. 59; HCF RSOF, pg. 2, Admission No.24, App. 78; *Henry v. IDWD* at *3, *10, App. 22-35; EEOC Waters Declaration, App. 547-558; DOL Henry Dep. at 54:25-55:7, 59:14-60:1, App. 113-119; RNeubauer Dep. at 24:24-25:25, 38:4-39:21, App. 416-420; Miles Dep. at 44:11-21, 50:4-20, App. 509-511].

21. A few identified victims worked at the Bunkhouse rather than the plant, and HCF/HTS was the company who determined which individuals worked at the plant versus the Bunkhouse. [*Solis v. HCF* , at 1109, App. 1-21; DOL SOF, pg. 5, No. 24, App. 60; HCF RSOF, pg. 2, Admission No. 24, App. 78; *Henry v. IDWD* at *10, App. 22-35; DOL Henry Dep. at 62:7-63:2, 82:6-83:8, App. 120-131; RNeubauer Dep. at 121:20-124:22, App. 450-453].

22. HCF/HTS, through Kenneth Henry and T.H. Johnson, made the decisions regarding the rate of pay for the disabled workers, the manner in which those workers were paid, and the manner in which they would be retired. [*Solis v. HCF* , at 1110, 1112, 1116, App. 1-

21 ; DOL SOF, pg. 5-6, 9, Nos. 28-29, 34, 42, 52, App. 60-61; HCF RSOF, pg. 2-3,

Admission Nos. 28-29, 52 and Qualified Response No. 34, App. 78-79;   *Henry v. IDWD*

at *10, App. 22-35; DOL Henry Dep. at 63:3-65:3, 84:7-86:25, App. 121-134; EEOC

Henry Dep. at 38:9-39:6, 100:7-101:21, App. 203-214; RNeubauer Dep. at 109:13-

110:15, 146:20-147:10, App. 445-461].

23. From 2006 to 2009, HCF/HTS disabled employees worked in the Evisceration

Department of the turkey processing plant. [*Solis v. HCF*, at 1111, App.1-21; DOL SOF,

pg. 10, No. 57, App. 65; HCF RSOF, pg. 2-3, Qualified Response No. 54, App. 78-79*;*

DOL Henry Dep. at 47:1-5, App. 108; Declaration of Tara Lindsay, dated June 2012

("EEOC Lindsay Declaration"), App. 559-566; Declaration of Dave Meincke, dated June

2012 ("Meincke Declaration"), App. 567-570].

24. HCF/HTS employees were brought to the plant from the Bunkhouse in HCF/HTS vans

driven by HCF/HTS crew chiefs. [*Solis v. HCF* , at 1110, App. 1-21; DOL SOF, pg. 9,

No. 54, App. 64; HCF RSOF, pg. 2-3, Admission No. 57, App. 78-79; *Henry v. IDWD* at

*3, App. 22-35;   DOL Henry Dep. at 55:8-56:3, App. 114-115; RNeubauer Dep. at

211:7-21, App. 487].

25. HCF/HTS received over $500,000 annually in 2006, 2007, and 2008 from WLF in

compensation for work performed by HCF/HTS employees on the line. [*Solis v. HCF*,

1110, App. 1-21; DOL SOF, pg. 7, No. 37, App. 62; HCF RSOF, pg. 3, Admission No.

37, App. 79;  EEOC Berry Dep. at 44:10-45:5, App. 252-253; Declaration of Allen

Hansen, dated June 2012, ("Hansen Declaration"), App. 571-582].

26. HCF/HTS employees prepared timesheets and issued paychecks to the employees. [*Solis

v. HCF*, at 1110, App. 1-21; DOL SOF, pg. 6, No. 33, App. 61; HCF RSOF, pg. 2,

Admission No. 33, App. 78*; Henry v. IDWD* at *4, *10, App. 22-35; DOL Henry Dep. at

80:11-81:5, App. 128-129; Deposition of Della McCoy, taken by U.S. Department of

Labor on 10/12/10 in *Solis v. HCF* ("McCoy Dep"), at 7:1-24, App. 407; DOL Johnson

Dep. at 20:19-23, App. 342; RNeubauer Dep. at pg. 128:14-131:9, App. 454-457].

27. During 2006 to 2009, the disabled workers were listed as employees of HCF/HTS on

documents submitted to the Texas Workforce Commission's Unemployment Tax

Services. Also during that time, HCF/HTS, as the stated employer of the disabled

workers, withheld Social Security and Medicare taxes from the income of each listed

individual.  Also from 2006 to 2009, HCF/HTS, as the stated employer of the disabled

workers, completed Form W-2 Wage and Tax Statements for each listed individual.

[*Solis v. HCF*, at 1110, 1114, App. 1-21; DOL SOF, pg. 5-6, Nos. 30-32, App. 60-61;

HCF RSOF, pg. 2, Admissions Nos. 30-32, App. 78; EEOC Berry Dep. at 59:18-62:2,

App. 267-270].

28. HCF/HTS was paid for the work performed by its employees, as WLF

compensated HCF/HTS in full for all work performed by the HCF/HTS

employees on its line. [*Solis v. HCF*, at 1109-1110, App. 1-21; DOL SOF, pg. 7,

Nos. 38-39, App. 62; HCF RSOF, pg. 3, Admission Nos. 38-39, App. 79; EEOC

Hansen Declaration, App. 571-582; DOL Henry Dep. at 77:23-78:2, 117:17-22,

App. 126-148; EEOC Henry Dep. at 45:5-17, App. 210].

29. HCF/HTS was the employer of all the disabled workers, regardless of whether they were

working at the West Liberty Foods processing plant or at the Bunkhouse. [*Solis v. HCF*,

at 1114, App. 1-21; DOL SOF, pg. 6, No. 35, App. 61; HCF RSOF, pg. 3, Qualified

Response No. 35, App. 79; *Henry v. IDWD* at *10, *11, App. 1-21; DOL Henry Dep. at 152:10-153:24, App. 164-165].

30. When T.H. Johnson became ill in 2005, Henry became more actively involved in the business in Iowa, including handling the financial responsibilities of the operation. Henry was scheduling the work of supervisory personnel at the Bunkhouse in Atalissa, Iowa and hiring of workers in Iowa was subject to Henry's approval. [*Solis v. HCF*, at 1110, 1116,  App. 1-21; DOL SOF, pg. 8, Nos. 44-46, App. 63; HCF RSOF, pg. 3, Admissions Nos. 44-46, App. 79; IA-FAD, at *7, App. 36-55; DOL Henry Dep. at 95:18-96:14, 104:10-18, 106:2-22, App. 136-142; EEOC Henry Dep. at 39:7-44:4, App. 204-209;  RNeubauer Dep. at 38:4-41:19, App. 419-422; DOL Berry Dep. at 56:3-19, App. 264].

31. From 2006 until the Atalissa Bunkhouse was shut down on February 7, 2009, Henry became increasingly responsible for the Iowa business, including becoming more involved with the supervisors Randy and Dru Neubauer, and cutting the hours supervisors working at the Bunkhouse. [*Solis v. HCF*, at 1110, 1116,  App. 1-21; DOL SOF, pg. 8, Nos. 47-48, App. 63; HCF RSOF, pg. 3, Admissions Nos. 47-48, App. 79; IA-FAD, at *7, App. 36-55; DOL Henry Dep. at 95:18-96:17, 101:11-20, App. 136-140; RNeubauer Dep. at 41:9-13, 70:21-73:5, App. 422-437].

32. In 2008, officers of the company, Jane Ann Johnson and Henry jointly made the decision to stop providing workers to the WLF processing plant and to shut down the facility in Atalissa, Iowa. [*Solis v. HCF*, at 1112, 1116,  App. 1-21; DOL SOF, pg. 9, Nos. 51-52, App. 64; HCF RSOF, pg. 3, Admissions Nos. 51-52, App. 79; *Henry v. IDWD*, at *11,

App. 22-35; DOL Henry Dep. at 86:2-25, App. 134;  EEOC Henry Dep. at 100:7-101:21,

App. 213-214; RNeubauer Dep. at 146:20-147:10, App. 460-461].

33. Defendant's Iowa Supervisor, Randy Neubauer, filled out time records for all of the

disabled employees, whether the disabled employees worked at the plant or at the

Bunkhouse.  The records were then sent to the main office in Goldthwaite, Texas, where

they were transcribed onto HCF/HTS monthly timesheets. [*Solis v. HCF*, at 1111, App.

1-21; DOL SOF, pg. 11, Nos. 66-67, App. 66; HCF RSOF, pg. 4, Admissions Nos. 66-

67, App. 80; *Henry v. IDWD*, at *4, App. 22-35; DOL Henry Dep. at 130:7-25, 131:3-

133:6, App. 151-154;  EEOC Henry Dep. at 87:13-88:23, App. 211-212; RNeubauer

Dep. at 128:14-131:9, App. 454-457; Deposition of Dru Neubauer taken by U.S. EEOC

on 5/16/12 ("DNuebauer Dep."), at 34:10-35:10, App. 493-494].

34.  The thirty-two (32) employees represented by the EEOC, who had been residents

working in the state of Iowa for at least 30 years, should have been paid according to

Iowa law governing minimum wages, -- a wage rate of at least $5.15 per hour from

February 24, 2007 through March 31, 2007, after which they should have been paid at a

wage rate of at least $6.20 per hour between April 1, 2007 and December 31, 2007.

From January 1, 2008 through February 7, 2009, employees should have been paid an

hourly wage rate of $7.25, as determined by Iowa law.  [2011 Iowa Code, Title III Pub.

Services and Regulation, Subtitle 2 Employer Services, Chapter 91D Minimum Wage;

91D.1 *Minimum wage requirements*].

35.  The federal hourly minimum wage in 2007, applicable in Iowa prior to April 1, 2007,

was $5.15.  [29 U.S.C.A §206 (2006)(effective Aug. 20, 1996 through Aug. 24,

2007)(Current version at 29 U.S.C. §206 (2012)), Fair Labor Standards Act ("FLSA")].

36. Each timesheet completed by HCF/HTS personnel was stamped with lines marked "Actual Income," "in kind Room & Board," "in kind Care," and "Total." HCF/HTS represents that the "Total" amount reflected the wages "paid" to the disabled employees each month, either in cash or the cost to HCF/HTS of furnishing the disabled employees with room, board and care. The amounts were the same for each disabled employee. [*Solis v. HCF* , at 1111, App. 1-21; DOL SOF,  pg. 11, Nos. 68-70, App. 66; HCF RSOF, pg. 4, Admissions Nos. 68-70, App. 80; *Henry v. IDWD*, at *4-5, App. 22-35; IA-FAD, at *6, App. 36-55; DOL Henry Dep. at 131:3-133:6, 137:25-138:23, 146:7-13, App. 152-162; McCoy Dep. at 14:5-15:14, 16:1-15, App. 410-412; EEOC Berry Dep. at 45:21-58:22, App. 253-266].

37. Even when HCF/HTS's timesheets reflected that the employees worked over 40 hours in a week, the stated wage on the timesheet always remained the same; there was never an amount listed as overtime. [*Solis v. HCF*, at 1111, App. 1-21; DOL SOF,  pg. 12, No.74, App. 67; HCF RSOF, pg. 4, Admission No. 74, App. 80; IA–FAD, at *6, *12 App. 36-55; McCoy Dep. at 12:22-13:4, App. 408-409].

38. Only the $65.00 per month was reported to government agencies as wages paid. [*Solis v. HCF*, at 1111, App. 1-21; DOL SOF,  pg. 12, No.75, App. 67; HCF RSOF, pg. 5, Admission No. 75, App. 81; IA-FAD, at *6, *12 App. 36-55; DOL Berry Dep. at 41:3-24, App. 238].

39. Based on the calculations performed by the U.S. Department of Labor, HCF/HTS failed to pay its disabled employees sufficient wages to meet the minimum wages and overtime amounts required by law. [*Solis v. HCF*, at 1113, 1118, App. 1-21; DOL SOF,  pg. 20, No.116, App. 75; EEOC O'Brien Declaration, App. 530-546].

40. Based on DOL/WHD calculations for both plant and Bunkhouse disabled employees, HCF/HTS was determined by the government to owe the disabled employees unpaid minimum wages and overtime compensation in the amount of $518,727.88 for the period from November 25, 2007 to February 7, 2009. [*Solis v. HCF*, at 1113, App. 1-21; DOL SOF, pg. 14, No.82, App. 69; HCF RSOF, pg. 5, Admission No. 82, App. 81; EEOC O'Brien Declaration, App. 530-546].

41. The wage rates paid to West Liberty Foods employees who worked in the same or similar positions and job categories as the disabled workers are set forth in WLF wage tables or "Production" tables, which contain job categories and corresponding pay rates. [EEOC Lindsay Declaration, App. 559-566].

42. The total of lost wages for the disabled HCF/HTS workers during the relevant two-year period was calculated by EEOC to be $762,760.30 (not including prejudgment interest) under "EEOC Pay Model A," utilizing the Iowa minimum wage figures. [Declaration of Charles McGhee, ("McGhee Declaration"), App. 583-587, with attached "EEOC Pay Model A," App. 588-718].

43. The total of lost wages for the disabled HCF/HTS workers during the relevant two-year period was calculated by EEOC to be $1,374,266.53 (not including prejudgment interest) under "EEOC Pay Model B," utilizing the comparative or market wage rates paid to similarly-situated or comparably qualified workers having equivalent tenure with West Liberty Foods. [McGhee Declaration, App. 583-587, with attached "EEOC Pay Model B," App. 719-849].

44. HCF/HTS has represented that for a period of time, which would include 2006 to 2009, the company was allowed to pay wages to its disabled workers under FLSA Section 29

U.S.C.A. 214(c), a provision, which under specific circumstances, may allow for the payment of modified or subminimum wages based on lower worker productivity. [EEOC Staebell Declaration, App. 522-529; EEOC RNeubauer Dep. at 13:15-25; 118:6-120:23, 121:20-122:4, 128:14-133:22, App. 414-459].

45. The U.S. Department of Labor Wage and Hour Division investigated HCF/HTS pay practices through the date of the cessation of business in February 2009, including defenses for exceptions to the FLSA. Such pay practices were concluded to be unlawful by the DOL/WHD and a federal district court. [*Solis v. HCF*, at 1112-1113, 1117-1119, App. 1-21; DOL SOF, pg. 19, Nos. 111-112, App. 74; HCF RSOF, pg. 6, Admissions Nos. 111-112, App. 82; EEOC Staebell Declaration, App. 522-529; EEOC O'Brien Declaration, App. 530-546].

46. The disabled plant workers of HCF/HTS performed as productively and effectively as non-disabled workers doing the same jobs at the turkey processing plant. [EEOC Waters Declaration, App. 547-558; Meincke Declaration, App. 567-570; Transcript Testimony of Dan Waters at Iowa Administrative Proceeding on 4/26/10, before the Iowa Department of Inspection and Appeals, Division of Administrative Hearings, ("Waters Transcript"), at 125:7-126:8, App. 850-853; RNeubauer Dep. at 13:15-25; 118:6-122:4, 128:9-133:22, App. 414-459; Miles Dep. at 42:21-44:10, 49:21-50:3, 61:22-62:21, 66:10-67:3, App. 507-515].

47. As a result of the DOL/WHD investigation of HCF/HTS pay practices, including the period from 2006 to February 2009, DOL/WHD denied HCF/HTS claims for credits pursuant to 29 U.S.C.A. §203(3)(m), toward the wages paid, as not having been justified

or properly accounted for by HCF/HTS. [EEOC Staebell Declaration, App. 522-529;

EEOC O'Brien Declaration, App. 530-546].

48. Checks were also written to HCF/HTS from each employee's Social Security funds

account on a regular basis to reimburse HCF/HTS for miscellaneous items, called

"ledger" expenses – items such as doctors' bills, clothes and entertainment expenses.

Checks were also issued from these SS and SSI accounts to "Cash" on a monthly basis,

with notations of "spending money" and "entertainment," although the ultimate recipient

of these monies is not confirmed. [*Solis v. HCF*, at 1110, App. 1-21; DOL SOF,  pg. 16-

17, Nos. 93, 95, 96, App. 71-72; HCF RSOF, pg. 5, Admissions Nos. 93, 95, 96, App. 81;

DOL Johnson Dep. at 18:8-18, 91:11-92:9, 99:14-101:23, 104:11-19, 112:12-114:18,

App. 341-355; EEOC Johnson-Moreland Dep., at 17:1-37:8, App. 363-383; DOL Berry

Dep. at 23:22-24:21, App. 236-237; EEOC Berry Dep. at 41:10-43:11, 81:18-94:3,  App.

250-294; DOL Henry Dep. at 140:19-141:2, App. 158-159; EEOC O'Brien Declaration,

App. 530-546].

49. In 2008, HCF/HTS made the following payments and payroll deductions in addition to

the monthly payment of $65.00 per month:

Monthly payment from each man's Social Security benefits accounts to HCF/HTS in the
amount of $487.00 for "room and board" and "in kind care";
Monthly payroll deductions from the monies received from West Liberty Foods in the
amount of $487.00 for "room and board"; and
Monthly payroll deductions from monies received from West Liberty Foods in the
amount of $572.00 for "in kind care."

 [*Solis v. HCF*, at 1111, App. 1-21; DOL SOF,  pg. 16, 17-18, Nos. 92, 97-101, 103-105,

App. 71; HCF RSOF, pg. 5-6, Admissions Nos. 92, 97-101, 103-105, App. 81-82;  IA-

FAD, at *6, *15, App. 36-55; DOL Berry Dep. at 8:4-25, 23:22-24:21,114:14-115:21,

App. 235-244; EEOC Berry Dep. at 39:17-40:17, 41:10-43:10, 49:2-58:22, 64:1-71:6,

81:18-94:3, 112:7-117:7, App. 248-300; EEOC Johnson-Moreland Dep. at 16:24-27:25,

28:19-37:8, 37:22-39:2, 48:8-54:3, App. 362-392;  EEOC O'Brien Declaration, App.

530-546].

50. In 2007, HCF/HTS made the following payments and payroll deductions in addition to

the monthly payment of $65.00 per month:

Monthly payment from each man's Social Security benefits accounts to HCF/HTS in the
amount of $473.00 for "room and board" and "in kind care";
Monthly payroll deductions from the monies received from West Liberty Foods in the
amount of $426.28 for "room and board"; and
Monthly payroll deductions from monies received from West Liberty Foods in the
amount of $549.81 for "in kind care."

[*Solis v. HCF* , at 1111, App. 1-21; DOL SOF,  pg. 15, 17-18, Nos. 91, 97-101, 103-105,

App. 70-74; HCF RSOF, pg. 5-6, Admissions Nos. 91, 97-101, 103-105, App. 81-82;

IA- FAD, at *6, App. 36-55; DOL Berry Dep. at 8:4-25, 23:22-24:21,114:14-115:21,

App. 235-244; EEOC Berry Dep. at 39:17-40:17, 41:10-43:10, 49:2-58:22, 64:1-71:6,

81:18-94:3, 112:7-117:7, App. 248-300; EEOC Johnson-Moreland Dep. at 16:24-27:25,

28:19-37:8, 37:22-39:2, 48:8-54:3, App. 362-392;  EEOC O'Brien Declaration, App.

530-546].

51. The DOL/WHD disallowed Section 3(m) credits sought by HCF/HTS for housing

workers in the Atalissa Bunkhouse because the facility where the company lodged the

disabled men was determined to be unsafe for occupancy by the Fire Marshal for the

State of Iowa in February 2009. [*Solis v. HCF*, at 1110, App. 1-21; DOL SOF,  pg. 3, No.

16, App. 58; HCF RSOF, pg. 2, Admissions No. 16, App. 78;  IA-FAD, at *4, App. 36-

55; EEOC O'Brien Declaration, App. 530-546; EEOC Staebell Declaration, App. 522-

529; Transcript Testimony of Iowa Fire Marshal Justine Wade on direct examination at

Iowa Administrative Proceeding on 4/26/10, before the Iowa Department of Inspection and Appeals, Division of Administrative Hearings ("Wade Transcript"), at 148-186, App. 814-913; Iowa DPS Fire Marshal's Inspection Findings, 2/7/09, App. 914-918].

52. At the time that the Bunkhouse was closed by the State of Iowa due to substandard construction, hazards and other unsafe living conditions, the disabled workers residing there were also plagued with a leaky roof and insect infestation. [Transcript Testimony of Mike Rohner on direct examination at Iowa Administrative Proceeding on 4/26/10, before the Iowa Department of Inspection and Appeals, Division of Administrative Hearings ("Rohner Transcript"), at 201-212, 219-222, 227, 228, App. 854-873; RNeubauer Dep. at 81:18-87:12, 166:19-169:10, 173:4-189:23, App. 438-482; DNeubauer, at 130:20-137:1, App. 495-502, Miles Dep. at 67:4-68:11, 75:13-78:2, App. 515-520; EEOC Henry Dep. at 113:9-115:1, App. 215-217].

53. The cost to Hill Country Farms for renting the Bunkhouse from the City of Atalissa, Iowa for several years had been only $600 per month. [*Solis v. HCF*, at 1109, App. 1-21; DOL SOF, pg. 3, No. 17, App. 58; HCF RSOF, pg. 2, Admission No. 17, App. 78; IA- FAD, at *4, *15, App. 36-55; RNeubauer Dep. at 191:17-194:18, App. 483-486; DNeubauer Dep, at 137:2-139:14, App. 502-504; DOL Berry Dep. at 104:21-24, App. 242].

54. The DOL/WHD investigation determined that HCF/HTS would not be allowed Section 3(m) credits for utilities and insurance costs which HCF/HTS was not able to segregate with separate accounting between expenses for the Bunkhouse versus the attached trailers where non-disabled supervisors were housed. [EEOC O'Brien Declaration, App. 530-546; EEOC Staebell Declaration, App. 522-529].

55. With regard to claimed transportation expenses of the workers, the DOL/WHD

investigation found that no Section 3(m) credits would be allowed for company vans,

their insurance, fuel, and maintenance, because the transportation of the disabled workers

from home to work and for delivery of food to the workers at the plant was for the benefit

of the employer, not the employees. [EEOC O'Brien Declaration, App. 530-546; EEOC

Staebell Declaration, App. 522-529].


Respectfully submitted,

/s/ Robert A. Canino
ROBERT A. CANINO
Regional Attorney
Oklahoma State Bar No. 011782

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Dallas District Office
207 South Houston Street, 3rd Floor
Dallas, Texas  75202
TEL  (214) 253-2750
FAX (214) 253-2749


## CERTIFICATE OF SERVICE

This is to certify that on June 25, 2012, I electronically transmitted the attached

document to the Clerk of the Court using the ECF system of filing, which will transmit a

Notice of the Electronic Filing to Defendant's counsel, who is an EFC registrant.


David Scieszinski
Attorney for Hill Country Farms, Inc.
d/b/a Henry's Turkey Service
dvdls@netwtc.net

/s/ Robert A. Canino
Robert A. Canino