IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                      Plaintiff,

    vs.

HILL COUNTRY FARMS, INC., doing
business as Henry's Turkey's Services,

                    Defendant.

No. 3-11-cv-41-CRW-TJS

Ruling Granting Plaintiff's Motion
for Partial Summary Judgment

      Plaintiff Equal Employment Opportunity Commission (EEOC) sued defendant

Hill Country Farms, Inc. d/b/a Henry's Turkey Services (Hill Country Farms), alleging it

discriminated against James Keith Brown and other intellectually disabled individuals in their

employment by subjecting them to unlawful harassment, discriminatory terms and conditions of

employment, and discriminatory wages in violation of the Americans With Disabilities Act of

1990, as amended.  42 U.S.C. § 12117 (a).  Jurisdiction is based on that federal statute.  EEOC

on June 25, 2012 filed its motion for partial summary judgment on the wage claims only.  Hill

Country Farms has filed no resistance or other document resisting the motion.  During a

telephone status conference that the court held with counsel for the parties on September 13,

defendant's attorney conceded no resistance had been filed.

      The court grants the EEOC motion for partial summary judgment.

      <u>Summary Judgment Standards</u>.  "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

1

Case 3:11-cv-00041-CRW-TJS   Document 36   Filed 09/18/12   Page 2 of 13


to judgment as a matter of law." Fed R. Civ. P. 56 (a).   "In applying this standard "[t]he evidence  of the non-movant is to be believed, and all justifiable inferences are to be drawn in the [non-movant's] favor.  Cross Medical Prod., Inc. v.  Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1302 (Fed. Cir. 2005)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 2d (1986)).  See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(on motion for summary judgment, the court views the evidence and any disputed factual issues in the light most favorable to the party opposing the motion).  The court may not weigh the evidence nor make credibility determinations when evidence is in conflict.  The court only determines whether there are any disputed issues, and , if so, whether those issues are both genuine and material.  See Anderson, 477 U.S. at 252.  But summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  See id. at 248.

EEOC has filed a Statement of Undisputed Facts (Docket #21-3, filed 6/25/12) that is not resisted; therefore that Statement establishes a factual basis on which the court now resolves the wage issue only.  These fifty-five numbered paragraphs of facts fully support the court's conclusion that EEOC is entitled to partial summary judgment against defendant Hill Country Farms establishing liability of defendant on all wage and damage issues before it.

The court now summarizes these dispositive facts, then the governing principles of law.

Facts from Summary Judgment Record. 1.  On February 24, 2009, James Keith Brown, through his sister and legal representative, Sherri Brown, filed a charge with the EEOC's Dallas District Office alleging disability discrimination by Hill Country Farms, Inc., in violation of the Americans with Disabilities Act of 1990.

2.   In the mid-1960's, Hill Country Farms, a for-profit corporation, with its principal place of business located in Goldthwaite, Texas, began working with disabled men in a variety of agricultural activities.

3.   Kenneth Henry, the owner of Henry's Turkey Service, Inc., and T.H. Johnson jointly incorporated as Hill Country Farms, Inc. d/b/a Henry's Turkey Service. Defendant uses the names "Hill Country Farms" and "Henry's Turkey Service" interchangeably(hereinafter "HCF/HTS").

4.   By the late 1970's, HCF/HTS began contracting with a turkey processing  plant located in West Liberty, Iowa to provide the disabled men as workers on the plant's turkey processing line.

5.   From at least 2006 until February 7, 2009, the HCF/HTS disabled employees worked on the processing line, commingled with the plant's non-disabled employees.

6.   During the entire period they worked at the plant, the HCF/HTS employees were housed in a converted school house, known as "the Bunkhouse", in Atalissa, Iowa, a few miles down the road from the plant where they worked in West Liberty, Iowa, until it was shut down in February of 2009 by the State of Iowa and the men were removed.

7.   For more than thirty (30) years during which the disabled men were employed in Iowa, all of them were always paid in the same manner, using the same method of calculation, a cash payment of $65.00 per month.

8.   HCF/HTS alleges that the disabled men were paid enough to constitute a legal minimum wage when the $65.00 per month was combined with provided "room and board" and "in kind care," which the Defendant urges should be credited toward the wages.

9.   All of the employees for whom the EEOC is seeking back wages received monthly deposits of Social Security and/or Supplemental Security Income ("SS and "SSI") into their individual bank accounts located at Mills County State Bank in Goldthwaite, Texas.

3

10.   The defendant corporation, through its officer Jane Ann Johnson, was listed as the Designated Representative Payee on these accounts, with total control over the money in the accounts.

11.   According to HCF/HTS, these Social Security funds were represented by HCF/HTS to have been used to "reimburse" the company for expenses the Defendant claims to have incurred by providing "board, lodging and other facilities" to the disabled employees.

12.   HCF/HTS's business activities in Iowa had been investigated previously by the United States Department of Labor's Wage and Hour Division ("DOL/WHD"), including an investigation which concluded in 2003.

13.   The DOL/WHD determined that HCF/HTS had violated the FLSA and instructed HCF/HTS regarding minimum wages, overtime, Section 3(m) credits and record keeping; however, despite the knowledge of these violations, and an agreement to comply with the wage laws, HCF/HTS never changed its pay practices.

14.   At all times relevant hereto, HCF has been an enterprise engaged in commerce.

15.   HCF/HTS is a for-profit corporation with its principal place of business located in Goldthwaite, Texas, and conducted business within the State of Iowa.

16.   Beginning in the late 1970's, Henry and T.H. Johnson negotiated with Louis Rich Foods to supply workers to work at the Louis Rich turkey processing plant in West Liberty, Iowa.

17.   Over the years, the plant changed ownership several times, but HCF/HTS continued to provide workers throughout each change of ownership.

18.   In 1996, HCF/HTS entered into a Contract with WLF, and per the Contract, HCF/HTS provided an adequate number of "Contractor's employees" to perform services.

19.   As part of their day-to-day operations, HCF/HTS determined which of the workers

4

would be assigned to the facility for work.

20.   HCF/HTS supervisory crew chiefs, not West Liberty Foods employees, directly supervised the HCF/HTS workers on the processing line.

21.   A few identified victims worked at the Bunkhouse rather than the plant, and HCF/HTS was the company who determined which individuals worked at the plant versus the Bunkhouse.

22.   HCF/HTS, through Kenneth Henry and T.H. Johnson, made the decisions regarding the rate of pay for the disabled workers, the manner in which those workers were paid, and the manner in which they would be retired.

23.   From 2006 to 2009, HCF/HTS disabled employees worked in the Evisceration Department of the turkey processing plant.

24.   HCF/HTS employees were brought to the plant from the Bunkhouse in HCF/HTS vans driven by HCF/HTS crew chiefs.

25.   HCF/HTS received over $500,000 annually in 2006, 2007, and 2008 from WLF in compensation for work performed by HCF/HTS employees on the line.

26.   CF/HTS employees prepared time sheets and issued paychecks to the employees.

27.   During 2006 to 2009, the disabled workers were listed as employees of HCF/HTS on documents submitted to the Texas Workforce Commission's Unemployment Tax Services. Also during that time, HCF/HTS, as the stated employer of the disabled workers, withheld Social Security and Medicare taxes from the income of each listed individual. Also from 2006 to 2009, HCF/HTS, as the stated employer of the disabled workers, completed Form W-2 Wage and Tax Statements for each listed individual.

28.   HCF/HTS was paid for the work performed by its employees, as WLF compensated HCF/HTS in full for all work performed by the HCF/HTS employees on its line.

29.   HCF/HTS was the employer of all the disabled workers, regardless of whether they were working at the West Liberty Foods processing plant or at the Bunkhouse.

30.   When T.H. Johnson became ill in 2005, Henry became more actively involved in the business in Iowa, including handling the financial responsibilities of the operation. Henry was scheduling the work of supervisory personnel at the Bunkhouse in Atalissa, Iowa and hiring of workers in Iowa was subject to Henry's approval.

31.   From 2006 until the Atalissa Bunkhouse was shut down on February 7, 2009, Henry became increasingly responsible for the Iowa business, including becoming more involved with the supervisors Randy and Dru Neubauer, and cutting the hours supervisors working at the Bunkhouse.

32.   In 2008, officers of the company, Jane Ann Johnson and Henry jointly made the decision to stop providing workers to the WLF processing plant and to shut down the facility in Atalissa, Iowa.

33.   Defendant's Iowa Supervisor, Randy Neubauer, filled out time records for all of the disabled employees, whether the disabled employees worked at the plant or at the Bunkhouse. The records were then sent to the main office in Goldthwaite, Texas, where they were transcribed onto HCF/HTS monthly time sheets.

34.   The thirty-two (32) employees represented by the EEOC, who had been residents working in the state of Iowa for at least 30 years, should have been paid according to Iowa law governing minimum wages, -- a wage rate of at least $5.15 per hour from February 24, 2007 through March 31, 2007, after which they should have been paid at a wage rate of at least $6.20 per hour between April 1, 2007 and December 31, 2007. From January 1, 2008 through February 7, 2009, employees should have been paid an hourly wage rate of $7.25, as determined by Iowa law.

35.   The federal hourly minimum wage in 2007, applicable in Iowa prior to April 1, 2007,

was $5.15.

36.   Each time sheet completed by HCF/HTS personnel was stamped with lines marked "Actual Income," "in kind Room & Board," "in kind Care," and "Total." HCF/HTS represents that the "Total" amount reflected the wages "paid" to the disabled employees each month, either in cash or the cost to HCF/HTS of furnishing the disabled employees with room, board and care. The amounts were the same for each disabled employee.

37.   Even when HCF/HTS's time sheets reflected that the employees worked over 40 hours in a week, the stated wage on the time sheet always remained the same; there was never an amount listed as overtime.

38.   Only the $65.00 per month was reported to government agencies as wages paid.

39.   Based on the calculations performed by the U.S. Department of Labor, HCF/HTS failed to pay its disabled employees sufficient wages to meet the minimum wages and overtime amounts required by law.

40.   Based on DOL/WHD calculations for both plant and Bunkhouse disabled employees, HCF/HTS was determined by the government to owe the disabled employees unpaid minimum wages and overtime compensation in the amount of $518,727.88 for the period from November 25, 2007 to February 7, 2009.

41.   The wage rates paid to West Liberty Foods employees who worked in the same or similar positions and job categories as the disabled workers are set forth in WLF wage tables or "Production" tables, which contain job categories and corresponding pay rates.

42.   The total of lost wages for the disabled HCF/HTS workers during the relevant two-year period was calculated by EEOC to be $762,760.30 (not including prejudgment interest) under "EEOC Pay Model A," utilizing the Iowa minimum wage figures.

7

43.   The total of lost wages for the disabled HCF/HTS workers during the relevant two-year period was calculated by EEOC to be $1,374,266.53 (not including prejudgment interest) under "EEOC Pay Model B," utilizing the comparative or market wage rates paid to similarly-situated or comparably qualified workers having equivalent tenure with West Liberty Foods.

44.   HCF/HTS has represented that for a period of time, which would include 2006 to 2009, the company was allowed to pay wages to its disabled workers under FLSA Section 29 U.S.C.A. 214(c), a provision, which under specific circumstances, may allow for the payment of modified or subminimum wages based on lower worker productivity.

45.   The U.S. Department of Labor Wage and Hour Division investigated HCF/HTS pay practices through the date of the cessation of business in February 2009, including defenses for exceptions to the FLSA. Such pay practices were concluded to be unlawful by the DOL/WHD and a federal district court.

46.   The disabled plant workers of HCF/HTS performed as productively and effectively as non-disabled workers doing the same jobs at the turkey processing plant.

47.   As a result of the DOL/WHD investigation of HCF/HTS pay practices, including the period from 2006 to February 2009, DOL/WHD denied HCF/HTS claims for credits pursuant to 29 U.S.C.A. §203(3)(m), toward the wages paid, as not having been justified or properly accounted for by HCF/HTS.

48.   Checks were also written to HCF/HTS from each employee's Social Security funds account on a regular basis to reimburse HCF/HTS for miscellaneous items, called "ledger" expenses – items such as doctors' bills, clothes and entertainment expenses. Checks were also issued from these SS and SSI accounts to "Cash" on a monthly basis, with notations of "spending money" and "entertainment," although the ultimate recipient of these monies is not confirmed.

49.   In 2008, HCF/HTS made the following payments and payroll deductions in addition to the monthly payment of $65.00 per month:   Monthly payment from each man's Social Security benefits accounts to HCF/HTS in the amount of $487.00 for "room and board" and "in kind care"; Monthly payroll deductions from the monies received from West Liberty Foods in the amount of $487.00 for "room and board"; and Monthly payroll deductions from monies received from West Liberty Foods in the amount of $572.00 for "in kind care."

50.   In 2007, HCF/HTS made the following payments and payroll deductions in addition to the monthly payment of $65.00 per month: Monthly payment from each man's Social Security benefits accounts to HCF/HTS in the amount of $473.00 for "room and board" and "in kind care"; Monthly payroll deductions from the monies received from West Liberty Foods in the amount of $426.28 for "room and board"; and Monthly payroll deductions from monies received from West Liberty Foods in the amount of $549.81 for "in kind care."

51.   The DOL/WHD disallowed Section 3(m) credits sought by HCF/HTS for housing workers in the Atalissa Bunkhouse because the facility where the company lodged the disabled men was determined to be unsafe for occupancy by the Fire Marshal for the State of Iowa in February 2009.

52.   At the time that the Bunkhouse was closed by the State of Iowa due to substandard construction, hazards and other unsafe living conditions, the disabled workers residing there were also plagued with a leaky roof and insect infestation.

53.   The cost to Hill Country Farms for renting the Bunkhouse from the City of Atalissa, Iowa for several years had been only $600 per month.

9

54.   The DOL/WHD investigation determined that HCF/HTS would not be allowed Section 3(m) credits for utilities and insurance costs which HCF/HTS was not able to segregate with separate accounting between expenses for the Bunkhouse versus the attached trailers where non-disabled supervisors were housed.

55.   With regard to claimed transportation expenses of the workers, the DOL/WHD investigation found that no Section 3(m) credits would be allowed for company vans, their insurance, fuel, and maintenance, because the transportation of the disabled workers from home to work and for delivery of food to the workers at the plant was for the benefit of the employer, not the employees.

Application of Law to Facts.

1.   The undisputed facts establish, as a matter of law, the defendant employer Hill Country Farms, Inc.  d/b/a Henry's Turkey Service ("HCF-HTS"), engaged in unlawful and discriminatory pay practices in violation of the Americans with Disabilities Act, as amended 42 U.S.C. section 12112 (a).  Such practices resulted in direct detriment to James Keith Brown and thirty-one other similarly-situated intellectually disabled employees referenced in the Complaint (Dkt. #1) and specifically identified in the EEOC's Amended Statement of Interest (Dkt. # 18), by depriving them of their rightful wages.

2.   The undisputed material facts establish that, during the relevant periods, the defendant employer HCF-HTS was not justified in paying lower wages to the disabled employees by any of the provisions of the Fair Labor Standards Act, 29 U.S.C. section 201 *et seq.* ("FLSA") or any other federal or state law or regulation.

3.   The persons identified and represented by the EEOC in this civil action are

hereby awarded monetary relief against the defendant employer HCF-HTS for its discriminatory wage violations.  The amount of damages awarded for lost wages, consistent with the provisions and intent of the ADA, shall be based on an amount of wages representing a comparable market wage rate, equivalent to that earned by non-disabled employees performing the same or similar jobs, with like tenure.  The period of time for the calculation of the award of monetary relief for lost wages is the two-year period from February 2007 through the time of cessation of defendant's Iowa operations in February 2009.

      4.  Based upon a finding that the defendant has no legal basis for paying the aggrieved individuals less than the legal minimum wage, it is undisputed that the disabled workers would be entitled to be paid in accordance with the minimum wage for the State of Iowa, where the disabled workers resided and worked for many years.  The minimum wage rate for the State of Iowa was higher than the federal minimum wage during much of the relevant time period.  Nevertheless, the amount of lost wages based on Iowa's minimum wage law, as calculated in "EEOC's Pay Model A," attached to the Declaration of Charles McGhee, MPSJ App. pages 583-87; 588-718 (Exhibits 23 and 23a), is less than, and subsumed by, the amount of wages calculated based on the comparable market wage rate to which they are entitled and which they are to be awarded.

      5.  HCF-HTS is not entitled to wage credits for amounts allegedly paid by defendant for room and board or other expenses pursuant to the provisions of 29 U.S.C. section 203 (m) ("Section 3(m)") of the FLSA.  Thus, no amounts for credited wages shall be applied to reduce the total of the amount of back pay for lost wages hereby awarded.

6.  For the foregoing reasons, the total amount of damages to be awarded for the ADA wage discrimination claims is $1,374,266.53 (exclusive of prejudgment interest) as reflected in "EEOC Pay Mode B," attached to the Declaration of Charles McGhee, MPSJ App. pages 583-87; 719-849 (Exhibits 23 and 23b).  This amount is based on the comparable market wage rate. The specific monetary relief awarded shall be distributed to each of the victims of discrimination in the amounts set forth in the "EEOC's Pay Model B" calculations.

7.  Further, by the granting of this motion for partial summary judgment, the EEOC's wage claims under the ADA shall be deemed concluded and resolved.  Defendant is precluded from presenting any defenses to the wage violations claims that were the subject of the motion for partial summary judgment.  Such defenses shall not be subject to re-litigation at trial or any further proceedings in this case.

8.  By October 18, 2012, the EEOC shall submit and defendant may submit to the court a calculation of prejudgment interest applicable to the amounts of damages hereby awarded to the aggrieved individuals.

_____9.  This summary judgment establishing defendant's liability is  consistent with and mandated by previous decisions rendered against defendant in this court, affirmed by the U.S. Court of Appeals for the Eighth Circuit in Solis v. Hill Country Farms, 808 F.Supp.2d 1105 (S.D. Iowa 2011), aff'd, No. 11-3069, 2012 WL 1674176 (8th Cir. 2012) and in the Iowa District Court for Polk County, affirmed by the Iowa Court of Appeals in Henry, et al. v. Iowa Dep't of Workforce Dev., No. CV8615 (Dist. Ct. Sept. 9, 2011).

_____Partial Summary Judgment.  The court grants EEOC's motion for partial summary

judgment establishing defendant's liability to the persons the EEOC represents on their wage claims only, and establishing their damages in the sum of $1,374,266.53 for the relevant two-year period from February 2007 to February 2009, plus prejudgment interest.

On or before October 18, 2012, the EEOC shall present a calculation of prejudgment interest on the damages.  A jury trial is scheduled for March 25, 2013, and not on March 26 as stated in a previous order, to decide the remaining issues.[1]

IT IS SO ORDERED.

Dated this 18th day of September, 2012.

_____
CHARLES R. WOLLE, JUDGE
U.S. DISTRICT COURT

---

[1]     EEOC's complaint alleging violations of the Americans with Disabilities Act also sets forth a number of claims other than wage discrimination, including hostile work environment harassment, verbal and physical abuse, and the imposition of other adverse terms and conditions of employment because of the employees' disabilities.  Liability, damages, and injunctive relief claims not specifically addressed in this motion are reserved for a jury trial, now scheduled to begin at 9:00 a.m. on March 25, 2013 at the U.S. Courthouse in Davenport, Iowa.